486 So.2d 1222 (1986)
Margaret C. WEEMS
v.
AMERICAN SECURITY INSURANCE COMPANY.
No. 55845.
Supreme Court of Mississippi.
March 12, 1986.
*1224 William J. Johnson, Clinton, for appellant.
R.E. Parker, Jr., Gail S. Akin, Varner, Parker & Sessums, Vicksburg, for appellee.
Before PATTERSON, C.J., and PRATHER and ROBERTSON, JJ.
ROBERTSON, Justice, for the Court:

I.
Today marks the second appearance of this case before this Court. In Weems v. American Security Insurance Co., 450 So.2d 431 (Miss. 1984) (Weems I) we held that Mrs. Margaret C. Weems, holder of a third deed of trust on a piece of residential property which has been destroyed by fire, was entitled to recover under the mortgagee clause of a fire insurance policy. Gilding the lily, Mrs. Weems now seeks to resurrect her already finally dismissed charges that the insurer denied her claim in bad faith for which she once demanded an assessment of punitive damages.
For the reasons explained below, we are of the view that Mrs. Weems' bad faith/punitive damages claim was finally dismissed in Weems I. Such claims have but one life. On a more modest point, we have concluded that the trial judge shortchanged Mrs. Weems by almost two years worth of interest on the mortgage debt. To this limited extent, we reverse and render.

II.
On December 14, 1981, John C. Barlow contracted with American Security Insurance Company for fire insurance on his home in the amount of $245,000.[1] The policy contained a standard mortgagee clause in favor of Mrs Margaret C. Weems, his ex-mother-in-law and the holder of a $30,000 note from Barlow secured by a third deed of trust on the home.
On March 16, 1982, three months after the issuance of the policy, the insured's premises were totally destroyed by fire. As mortgagee, Mrs. Weems made a claim on the policy. American Security denied the claim, asserting that there had been a change of condition or increase of hazard and that Mrs. Weems had failed to notify the insurance company thereof. Specifically, American Security invoked the language of the policy, as mandated by Miss. Code Ann. § 83-13-9 (1972) which provides:
The mortgagee (or trustee) shall notify this company of any change of ownership or occupancy or increase of hazard which shall come to the knowledge of said mortgagee (or trustee) and, unless permitted by this policy, it shall be noted thereon and the mortgagee (or trustee) shall, on demand, pay the premium for such increased hazard for the term of the use thereof; otherwise this policy shall be null and void.
In Weems I we held that this defense failed on the uncontradicted facts. We directed the entry of judgment in favor of Mrs. Weems and against American Security on the underlying insurance contract claim.
Not surprisingly, Mrs. Weems on remand filed a motion for summary judgment on the contract claim. In support Mrs. Weems filed the following:
(1) This Court's opinion in Weems I.

(2) This Court's mandate in Weems I.

(3) Her own affidavit attesting to the following facts:
(a) John N. and Sandra W. Barlow executed a deed of trust to secure the repayment of $30,000 together with interest at the rate of ten (10) percent *1225 per annum from the date of April 7, 1980. [The land deed of trust was filed together with the affidavit.]
(b) The indebtedness, as evidenced by the land deed of trust, has been reduced to judgment in the United States District Court for the Southern District of Mississippi, Western Division, in Barlow v. American Security Insurance Company, Cause Nos. W82-0101(c), W82-0113(c), W82-0114(c). [Order of U.S.Dist.Ct., So.Dist. included as Ex. "E", R. 22]
(c) That since the rendition of the above judgment, Barlow had made five payments totaling $200.
(4) An affidavit by John Barlow attesting to the following:
(a) That he executed a land deed of trust on April 7, 1980, securing an indebtedness of $30,000 together with interest thereon at the rate of ten (10) percent per annum.
(b) That American Security Insurance Company issued an insurance policy, No. 4310282, in the sum of $245,000 covering the residence located on the land described in the deed of trust. And that on March 26, 1982, the residence was completely destroyed by fire.
(c) That the indebtedness to Mrs. Margaret Weems has since been reduced to a judgment entered in the cause aforecited in Mrs. Weems' affidavit and that he has reduced said judgment by $200.
On July 11, 1984, the trial judge granted Mrs. Weems' motion and entered summary judgment in her favor against American Security in the amount of $30,000 plus interest of ten (10) percent per annum from and after March 30, 1982, plus costs.
On July 23, 1984, Mrs. Weems filed a motion to alter or amend the partial summary judgment entered in her favor, suggesting that interest on the $30,000 principal amount should run from and after April 7, 1980, being the date on which the note and the insured deed of trust had been executed, and not from March 30, 1982. This motion was denied.
Contemporaneously therewith, American Security had filed a cross-motion for summary judgment in which it sought final dismissal of Mrs. Weems' bad faith refusal claim  as though such were necessary to extinguish any phoenix-like capacity of that claim to arise from the ashes of Mrs. Weems' first trial. In any event, this cross-motion was sustained and an order was entered to that effect dated July 27, 1984.
On August 6, 1984, Mrs. Weems filed a motion to vacate the partial summary judgment order granted American Security on the issue of punitive damages. That motion was also denied.
This appeal has been initiated by Mrs. Margaret C. Weems who assigns as error that
(1) The trial court erred in granting American Security Insurance Company's motion for summary judgment on the issue of punitive damages.
(2) The trial court erred in refusing to award interest to plaintiff prior to March 30, 1982.
The Appellee, American Security Insurance Company, in turn has cross-appealed and assigned as error the following, to-wit:
The trial court erred in awarding judgment to Mrs. Weems on the principal sum of $30,000 plus interest at the rate of ten (10) percent per annum from March 30, 1982.

III.
In her first assignment of error on direct appeal, Mrs. Weems argues that the trial court erred in sustaining American Security's motion for partial summary judgment in which her claim for punitive damages  at least on the face of the trial court's order  was finally dismissed.
The claim at issue has its origin in Mrs. Weems' original complaint filed June 18, 1982. There she charged American Security with bad faith refusal to pay her claim as an insured mortgagee and demanded an *1226 assessment of $500,000 in punitive damages. At trial in Weems I American Security requested and was granted a peremptory instruction in its favor on the punitive damages issue. The final judgment in Weems I entered January 20, 1983, finally dismissed all of Mrs. Weems claims, obviously including the claim for punitive damages.
The appeal in Weems I is significant. We have reviewed Mrs. Weems' assignment of errors filed July 1, 1983, as well as the briefs of the parties. Mrs. Weems in no way challenges the trial judge's dismissal of her bad faith/punitive damages claim. The subject is never mentioned. Certainly, nothing in the opinion released in Weems I on May 2, 1984, disturbs so much of the trial court judgment as dismissed the punitive damages claim.
As a general rule, when this Court reverses and remands for a new trial, the case is to be tried de novo on all issues. Miller v. Watson, 467 So.2d 672, 674 (Miss. 1985); Clark v. Clark, 203 Miss. 28, 33 So.2d 293 (Miss. 1948). The trial de novo in this instance certainly includes the issue of Mrs. Weems' contract damages even though in Weems I she did not assign as error the failure of the final judgment to award such.
There is an obvious exception to this general rule. Where the judgment on the issue not assigned is one which can rationally co-exist with the appellate reversal on the issue which is assigned as error, the judgment on the issue not assigned ordinarily remains final. Cf. Statham v. Blaine, 234 Miss. 649, 670, 108 So.2d 213 (1959). Within this exception is Mrs. Weems bad faith/punitive damages claim which we regard as a claim separate and independent of her claim on the insurance contract. The reason why Mrs. Weems' bad faith claim lies within the exception is that it proceeds on a theory of liability factually and legally distinct from her contract claim. This becomes apparent when it is remembered that a bad faith refusal claim is an "independent tort", State Farm Fire and Casualty Co. v. Simpson, 477 So.2d 242, 250 (Miss. 1985); Standard Life Insurance Company of Indiana v. Veal, 354 So.2d 239, 247 (Miss. 1977).
Because we perceive there has been some confusion on the point, we wish to make it clear that the substantive rule breach of which may subject a party to an assessment of punitive damages is the same in bad faith refusal cases as in any others. Compare State Farm Fire and Casualty Co. v. Simpson, 477 So.2d 242, 248-49 (Miss. 1985); Reserve Life Insurance Company v. McGee, 444 So.2d 803, 808-09 (Miss. 1983); Standard Life Insurance Company of Indiana v. Veal, 354 So.2d 239, 247 (Miss. 1977) with Gardner v. Jones, 464 So.2d 1144, 1148-49 (Miss. 1985); Snowden v. Osborn, 269 So.2d 858, 860-61 (Miss. 1972); T.G. Blackwell Co. v. Eshee, 261 So.2d 481, 485 (Miss. 1972); Seals v. St. Regis Paper Co., 236 So.2d 388, 392 (Miss. 1970).
From all of these cases we identify two somewhat distinct types of circumstances wherein one's conduct may subject him to punitive damages: where the defendant acted with malice and where the defendant acted with gross negligence or reckless disregard for the rights of others. See Restatement (Second) of Torts § 908(2) (1979).
For today's purposes, the point is that the bad faith/punitive damages claim is one separable in law and in fact from the contract claim asserted by an insured under the terms of the policy. This separability exists both with respect to the liability and damages features of the contract claim vis-a-vis the bad faith refusal claim.
Without doubt our decision in Weems I establishes as a matter of law that American Security had no "arguable reason" for denying Mrs. Weems' claim. The absence of an arguable reason, however, does not lead inexorably to an assessment of punitive damages. This is because, as said above, the substantive test for awarding punitive damages is the same in bad faith refusal cases as in any other case where punitive damages are sought. That test *1227 requires the plaintiff to show some wilful or malicious wrong of the gross or reckless disregard for the rights of others. National Life Insurance Co. v. Miller, 484 So.2d 329, 336 (Miss. 1985); Reserve Life Insurance Company v. McGee, 444 So.2d 803, 808-09 (Miss. 1983); Travelers Indemnity Co. v. Wetherbee, 368 So.2d 829, 835 (Miss. 1979).
The point is driven home by a recognition of the various circumstances in which, objectively speaking, an insurer may have no arguable reason for refusal to pay a claim but may nevertheless not be lawfully subject to an assessment of punitive damages. Where the failure to pay the claim is the result of "a clerical error or honest mistake", State Farm Fire & Casualty Co. v. Simpson, 477 So.2d at 250; Consolidated American Life Insurance Co. v. Toche, 410 So.2d 1303, 1306 (Miss. 1982), punitive damages do not lie though objectively speaking the insurer has no arguable reason for failure to honor a just claim. A failure to pay may result from negligence on the part of the insurer and punitive damages are not assessable, again assuming arguendo the objective absence of an arguable reason for such failure to pay. State Farm Fire & Casualty Co. v. Simpson, 477 So.2d at 250; Bellefonte Insurance Co. v. Griffin, 358 So.2d 387, 391 (Miss. 1978). We have only recently recognized that not every case of fraud is a case for punitive damages. Gardner v. Jones, 464 So.2d 1144, 1148 (Miss. 1985).
In the end we come down to an inquiry as to whether, having in mind the substantive rule breach of which may subject a party to assessment of punitive damages, the final judgment entered in favor of American Security on January 20, 1983, on the bad faith/punitive damages issue, may rationally co-exist with our determination in Weems I that Mrs. Weems was entitled to a peremptory instruction on the liability feature of her contract claim. We hold that it may.
This exception to the general rule of a full trial de novo upon reversal finds its roots in the notion that, ordinarily, an appeal brings before this Court only such portions of the final judgment of the trial court as are expressly assigned as errors, although it is within our inherent authority to notice plain error. Rule 6(b), Miss.Sup. Ct.Rules. So much of the final judgment of the trial court as is not disturbed on appeal remains final. Middleton v. Davis, 105 Miss. 152, 171, 62 So. 164, 166 (1913). Here in Weems I the trial court expressly held that, as a matter of law, Mrs. Weems' had not provided that minimally necessary proof to get her bad faith claim to the jury. The trial judge expressly instructed the jury to this effect. He thereafter entered final judgment dismissing Mrs. Weems' punitive damages claim on January 20, 1983. The viability of that claim became dubious at best when on her first appeal Mrs. Weems failed to assign as error the trial judge's ruling. Mrs. Weems' bad faith/punitive damages claim  because it is separable legally and factually from Mrs. Weems contract claim  was extinguished, finally and forever, with the issuance of the mandate in Weems I on May 18, 1984.[2]
Weems I holds that a peremptory instruction should have been granted Mrs. Weems on the liability feature of her contract claim against American Security. The opinion does provide that upon remand the trial court
shall conduct such further proceedings, including those regarding damage as may be appropriate and not inconsistent with what we have said herein.
450 So.2d at 437.
Most assuredly, the subsequent proceedings below regarding the bad faith/punitive damages claim  a "separable" claim finally dismissed at trial in Weems I, the dismissal of which was not assigned as error on appeal nor disturbed in any way by this Court's opinion or mandate  were *1228 inappropriate and inconsistent with Weems I.
We hold that, in the present procedural posture, the judgment of the trial court finally dismissing Mrs. Weems' bad faith/punitive damages claim must be affirmed. This is so not because American Security has made the showing required under Rule 56, Miss.R.Civ.P., but because that claim was finally extinguished in Weems I.

IV.
Appellant Weems next assigns as error the trial court's refusal to award her interest prior to March 30, 1982, the date when she submitted her proof of loss. Principally, she relies upon Miss. Code Ann. § 83-13-7 (1972) which provides that the mortgagee should receive payment from the insurer of the amount of his insured interest as his claim would appear. Secondly, the loss payable clause in the insurance policy guarantees a mortgagee payments, in the case of loss, of not only the principal sum but as his interest is shown in the deed of trust.
American Security at this point in the appeal does not question the propriety of granting summary judgment to Mrs. Weems. Instead, what American Security challenges the interpretation given to the phrase "as interest may appear". It is asserted that the phrase refers to the priorities of the different mortgagees to the extent of the obligations secured thereby and not the interest rate shown in each note. As a matter of common knowledge, American Security's reading of the phrase is correct, although, as will be seen presently, the point benefits the insured mortgagee, not her insurer.
At issue is the interpretation of the phrase "As interest may appear". In Hartford Fire Insurance Co. v. Associates Capital Corp., 313 So.2d 404, 407 (Miss. 1975):
The general rule of law in insurance cases is that, under a simple `loss payable' or `open-mortgage clause' in an insurance policy payable to the mortgagee `as his interest may appear,' the mortgagee is only entitled to receive the amount due him on his mortgage out of the funds recovered by or due to the insured... . On the other hand, where the `union' or `standard mortgage clause' is included in an insurance policy, the mortgagee is entitled to the proceeds of the policy... .
See also Lititz Mutual Insurance Co. v. Miller, 210 Miss. 548, 556-57, 50 So.2d 221 (1951).
In Maryland Casualty Company v. Legg, 247 So.2d 812, 814 (Miss. 1971), the Court stated:
There was a loss payable clause to Conley-Morris placed in the policy itself by defendant. Defendant thus acknowledged that Conley-Morris was entitled to recover as its interest appeared to be in its purchase money deed of trust.
In 5A Appleman Insurance Law and Practice § 3404; the text writers said:
The words "as interest may appear" when referring to a senior mortgagee, do not disclose any intention to include a junior mortgagee or at least not unless the insurance exceeds the senior mortgagee's interest, even though the mortgagor may have agreed to protect the interest of both mortgagees. If the policy protects the interest of both mortgagees, then really there are three parties insured in the respective interest: the first mortgagee, second mortgagee, and owner. Under such circumstances, the first mortgagee will receive payment up to the full amount of his debt and interest, and the second mortgagee will take the balance, if any, up to the total of his interest. [citations omitted and emphasis mine]
The phrase `as its interest may appear' does not refer to the mortgagee's interest in the property but to the amount of debt owed to it secured by the mortgage or deed of trust. Or otherwise stated, the word `interest' as used in a clause making insurance payable to a mortgagee as his interest may appear means, not his interest in the property insured, but *1229 the `interest' or amount which the mortgagor has appointed him to collect form the proceeds of the policy. That is, a clause `as his interest may appear' has reference to debts, the phrase `as his interest may appear' meaning merely that the insurer will pay the mortgagee to the extent to which his mortgage is a lien or charge on the premises.
Couch On Insurance 2d. (Rev.ed.) § 42:696.
And in Sias v. Roger Williams Insurance Co., 8 Fed. 187 at 188 (CC.D.N.H. 1880) the Court said:
The phrase `as his interest may appear'... . means that the company will pay the mortgagee to the extent of his lien or charge upon the premises.
Franklin Saving Inst. v. Cent. Mut. Co., 119 Mass. 240; Foote v. Hartford Fire Ins. Co., 119 Mass. 259.
In Amory v. Reliance Ins. Co., 208 Mass. 378, 94 N.E. 677 (1911) the Court held in explaining the rights of the appellant to the proceeds:
Inasmuch as the claims of the plaintiff that can be sustained are all for a loss on the property upon Arlington Street, Amory the first mortgagee, is entitled to the whole amount of his debt and interest, under the mortgage, due at the time of the fire, ...
The United States Court of Appeals in Calvert Fire Insurance Co. v. Environs Development Corp., 601 F.2d 851 (5th Cir.1979) allowed the recovery of attorneys fees as contracted for in the promissory note from the insurance proceeds, even though holding that the mortgagee had extinguished his debt in a foreclosure sale held after the fire loss by bidding on and buying the remnants of the premises.
The record reflects that there may be several incumbrances on the insured premises prior in right to Mrs. Weems' deed of trust. Two prior deeds of trust and federal tax lien have been disclosed. We are not here called upon to decide the validity or amount of these claims or their priority.
We are here called on to determine the amount of Mrs. Weems' claim. That amount is determined by reference to the terms of the insurance contract. That contract required the insurance company, subject to the policy limits, to pay to Mrs. Weems as her interest may appear. Her interest is a security interest measured in amount by a promissory note secured by the deed of trust. We determine Mrs. Weems' interest by aggregating all sums payment of which is secured by the deed of trust. This certainly includes interest on the mortgage debt and here that rate of interest is ten percent per annum from April 7, 1980.
We hold that in determining the extent of Mrs. Weems' interest in the insured premises, interest should have been included from April 7, 1980, the date of the deed of trust on the insured property. The case should to this extent be reversed.

V.
On cross-appeal American Security challenges the inclusion in Mrs. Weems' "interest" any interest at all. As grounds American Security argues that the underlying promissory note was never produced; hence, we cannot know whether interest was provided for or at what rate. The point is specious.
It appears that the note was not produced because it was destroyed in the fire. Barlow, however, testified that he was familiar with it and that it provided for interest at ten percent per annum. Sandra Weems Barlow Berry  Mrs. Weems' daughter and John Barlow's ex-wife  also testified to the ten percent interest rate. The affidavits of John C. Barlow and Mrs. Weems in the summary judgment proceedings immediately below similarly supported a finding of a ten percent rate. The cross-assignment of error is denied.
AFFIRMED IN PART AND REVERSED IN PART AND RENDERED ON DIRECT APPEAL; AFFIRMED ON CROSS-APPEAL.
*1230 PATTERSON, C.J., WALKER and ROY NOBLE LEE, P.JJ., and HAWKINS, DAN M. LEE, PRATHER, SULLIVAN and ANDERSON, JJ., concur.
NOTES
[1] The facts have been recited in Weems I, 450 So.2d at 433-434, and are briefly summarized here.
[2] Under limited and rare circumstances a final judgment such as this may be reopened, notwithstanding what we have said above. See Rule 60, Miss.R.Civ.P. No one has suggested that any Rule 60 circumstances are present here.